**UNITED STATES**

v.

**Staff Sergeant Keith R. HILT, FR 336–46–0174, United States Air Force.**

**ACM S26205 (recon).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 31 Aug. 1983.

Decided 13 April 1984.

Appellate Counsel for the Accused: Colonel Leo L. Sergi.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Kevin L. Daugherty.

Before HODGSON, FORAY and MILLER, Appellate Military Judges.

**DECISION UPON RECONSIDERATION**

HODGSON, Chief Judge:

Our original decision was released on 16 January 1984, and the case is again before us on a motion for reconsideration. The motion is granted.

The accused was sentenced to a bad conduct discharge, confinement at hard labor for six months and reduction to airman basic.

As a result of what appellate government counsel lightly term an "administrative oversight," the accused served an additional 50 days' post trial confinement beyond his minimum release date. Apparently, the supervisory authority's action reducing the confinement portion of the sentence from six to four months was ignored by both the accused's squadron and the confinement officer. We note, however, that all persons i.e., the accused[*], staff judge advocate, trial defense counsel and convening authority, etc., having an official interest in the trial were provided a copy of the supervisory authority's amelioratory action.

Confinement at hard labor is a severe punishment involving the deprivation of personal freedom for a specified period. It is axiomatic that a confined person is to be released once the confinement has been served. The failure of responsible individuals to insure that this is accomplished is something more than an "administrative oversight;" it is a clerical blunder warranting our sharpest criticism.

Under the facts and circumstances of this case, we conclude that the accused merits meaningful relief with respect to the remainder of his sentence. *See United States v. Suzuki*, 14 M.J. 491 (C.M.A.1981). Accordingly, we find appropriate only so much thereof as provides for confinement at hard labor for four months and reduction to airman. The findings of guilty and the sentence, as modified, are

AFFIRMED.

FORAY, Senior Judge, concurs.

---

[*] In a letter attached to the MOTION FOR RECONSIDERATION the accused suggests that "gross negligence" on the part of the base legal office in not forwarding his mail prevented him from knowing that the supervisory authority had granted clemency regarding confinement.

MILLER, Judge, concurring only in the result:

In my opinion the proper scope of this court's judicial authority (including any supervisory authority that it might possess) does not extend beyond matters encompassed by the Uniform Code of Military Justice. Because we are a creation of that Code, our charter is precisely limited to insuring fair and constitutional compliance of the legislation it contains.

Accordingly, we lack jurisdiction over subject matters falling outside the Code's scope. We may not consider the fairness or constitutionality of administrative discharge actions initiated outside its provisions; and we cannot assume jurisdiction over the resolution of torts (constitutional or otherwise) committed by Air Force members, even though committed against other Air Force members, because they are not a part of the criminal justice system created by the Code.

Likewise, we cannot assume jurisdiction over post-trial abuses by confinement authorities (whether they be civilian or military) once a convict, having been properly sentenced to confinement under the Code, has left the sanctity of the Code's military justice system and entered a post-trial confinement facility created and run entirely independently, thereof. (*See generally United States v. Worden*, 17 M.J. 887 (A.F. C.M.R.1984.)

Certainly, this is not to say that an Air Force member who suffers constitutional abuses that occur outside the Code's purview is without legal recourse to a federal court system; it is simply to say that ours is neither the legal nor the appropriate court system for such legal recourse.

Unlike the majority, then, I cannot in good conscience consider this motion for post-trial relief (at least facially, it relates to a non-Code related abuse occurring in a non-Code created confinement facility), unless I can identify specific facts that reveal the abuse complained of occurred as a direct result of an error cognizable by this Court under the Code. The fact, in and of itself, that the confinement authorities of a post-trial confinement facility in which a convict has been properly confined pursuant to a properly approved sentence imposed by a properly conducted court-martial,[*] fails to release the accused in accordance with the terms of that sentence, simply does not meet this fundamental jurisdictional criteria.

Fortunately, my independent scrutiny of the trial record does reveal such a Code related abuse. Consequently, I can concur with the desireable result reached by the majority, through what I believe to be a proper exercise of this Court's authority.

A careful examination of the final court-martial order issued by the reviewing authority in this case reveals that it was eminently correct in all respects save one. Although the document correctly quoted the reviewing authority's ameliorating action and ordered that it immediately be effectuated, its distribution block reveals that it was not communicated to the only individual that was directly responsible for effectuating an amelioration relating to confinement, to wit: the correctional officer of the installation where the accused was in custody.

Air Force Manual 111-1, Military Justice Guide, para. 9–1h(2)(f) (2 July 1973) (the then current edition of our present Air Force Regulation 111–1, Military Justice Guide, 1984) specifically required that the correctional officer of the installation where the accused was in custody receive a

---

[*] Under U.C.M.J., Article 58(a), 10 U.S.C. § 858(a), there is no requirement to designate an Air Force confinement facility as the accused's place of post-trial confinement; to wit:

[A] sentence of confinement ... may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use. Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State Territory, District of Columbia, or place in which the institution is situated.

copy of such an order. Communication of an order containing such an ameliorating action to the individual or unit directly responsible for effectuating the ameliorating effect of that action is part and parcel of proper completion of the action, itself. Absent proper communication of the reviewing authority's action via such an order, the convict's correctional officer remains under a duty to release the accused in accordance with the terms of his unameliorated sentence, *ergo*, it is unlikely that it could ever be effectuated. Such was certainly the case here.

Ordinarily, the proper remedy for an error in the action of a reviewing authority is a return of the case to that official for correction of his error. Here, however, where the resulting prejudice to the accused stemming from the error, can no longer be remedied by such a return, it is appropriate for us to unilaterally remedy this prejudice by reassessing his approved sentence.

Accordingly, I do not disagree with the majority's decision to set aside the bad conduct discharge in this case. I concur in its result.

