UNITED STATES, Appellee,

v.

Sergeant Gilberto PAZ–MEDINA, United States Army, Appellant.

ARMY 9800452.

U.S. Army Court of Criminal Appeals.

9 Oct. 2001.

For Appellant: Colonel Adele H. Odegard, JA; Major Kirsten V.C. Brunson, JA; Captain Blair T. O'Connor, JA (on brief).

For Appellee: Colonel David L. Hayden, JA; Lieutenant Colonel Edith M. Rob, JA; Major Daniel G. Brookhart, JA; Captain Susana E. Watkins, JA (on brief).

Before TOOMEY, Senior Judge, CARTER, and HARVEY, Appellate Military Judges.

OPINION OF THE COURT

HARVEY, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of aggravated assault with a means likely to produce death or grievous bodily injury, and assault consummated by a battery, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [hereinafter UCMJ].[1] The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for six months, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for mandatory

---

1. Pursuant to his pleas, appellant was found guilty of a separate assault consummated by a battery (Specification 2 of Charge II). The military judge merged this specification into the aggravated assault specification after findings and dismissed Specification 2 of Charge II.

review under Article 66, UCMJ, 10 U.S.C. § 866.

Appellant asserts that the staff judge advocate's recommendation (SJAR) was incomplete and seeks a new SJAR and action. Appellant states that the SJAR failed to note the members' recommendation that the convening authority waive automatic forfeitures and direct payment to appellant's spouse. *See* UCMJ art. 58b(b), 10 U.S.C. § 858b(b).[2] Government appellate counsel concedes that the SJAR was incomplete, but asserts that the issue of forfeitures was raised by the defense submission to the convening authority pursuant to Rule for Courts–Martial 1105 [hereinafter R.C.M.], or alternatively, that any error was waived under R.C.M. 1106(f)(6) by the failure of the defense counsel to object. We find that the SJAR was incomplete, that the omission was not waived, that the error was plain and obvious and caused prejudice, and that relief is warranted.

### Facts

Appellant's wife, who was unemployed, was the victim of and only witness to the assault consummated by a battery and aggravated assault. She testified on the merits that appellant committed the offenses, but attempted to minimize appellant's culpability. During the sentencing phase of appellant's trial, appellant's wife stated that she loved her husband and that she wanted the family to stay together. She indicated that appellant was a good husband and father. She testified further that a government representative told her that she would receive transitional compensation for three years[3] in the amount of $800.00 per month for herself and $200.00 per month for her son.[4] There was no testimony concerning waiver of automatic forfeitures. The military judge did not explain transitional compensation to the members, but he did instruct as follows regarding waiver of automatic forfeitures:[5]

> [T]he convening authority may direct that any or all forfeitures of pay and allowances which the accused would otherwise be required to forfeit by operation of law to be paid to the accused's dependents for a period not to exceed six months. This power by the convening authority is entirely discretionary and you should not rely upon the convening authority to take this action when considering an appropriate sentence in this case.

As part of the adjudged sentence, the members sentenced appellant "to forfeit all pay and allowances," but recommended that appellant's "spouse receive[ ] forfeited pay and allowances." Appellant's forfeiture of all pay and allowances and reduction to Private E1, adjudged as part of his court-martial sentence, were effective fourteen days after

2. Article 58b(b), UCMJ, states:

> In a case involving an accused who has dependents, the convening authority or other person acting under section 860 of this title (article 60) may waive any or all of the forfeitures of pay and allowances required by subsection (a) for a period not to exceed six months. Any amount of pay or allowances that, except for a waiver under this subsection, would be forfeited shall be paid, as the convening authority or other person taking action directs, to the dependents of the accused.

3. Transitional compensation commences as of the date of the approval of the court-martial sentence, and continues for the lesser of thirty-six months, or "the unserved portion of the member's period of obligated active duty service," but not less than twelve months. 10 U.S.C. § 1059(e) (1994); *see also* Dep't of Defense Instruction 1342.24, Transitional Compensation for Abused Dependents, para. 6.2.1.1 (May 23, 1995); Army Reg. 608–1, Personal Affairs: Army Community Service Center, Appendix F–2 (31

Aug. 2000). Appellant's trial was completed on 25 March 1998, and the convening authority approved the sentence on 31 March 1999. At the time of trial, appellant's expiration of term of service [hereinafter ETS] was 5 January 2000.

4. Payment to appellant's spouse is made at the "rate in effect for that month for the payment of dependency and indemnity compensation under section 1311(a)(1) of title 38." 10 U.S.C. § 1059(f)(1) (1994). Payment to appellant's spouse on behalf of his infant son is increased "by the amount in effect for that month under section 1311(b) of title 38." 10 U.S.C. § 1059(f)(2) (1994). On the date of the convening authority's action, the dependency and indemnity compensation rate was $911.00 for appellant's spouse and $229.00 for his dependent son, who was in the care of his spouse.

5. This instruction appears in the sentencing instructions of Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook (30 Sep. 1996).

his sentence was adjudged. UCMJ art. 57(a)(1)(A), 10 U.S.C. § 857(a)(1)(A).

On 22 March 1999, appellant's defense counsel, as part of his submission under R.C.M. 1105, provided statements from appellant and his wife. Appellant's defense counsel indicated that appellant was released from confinement and working in Las Vegas, Nevada, in excess leave status.[6] Appellant's defense counsel asked the convening authority to "approve the findings of guilt[y] on all charges and the entire sentence with the exception of one month of confinement," arguing that approval of less than six months' confinement avoids the application of a federal immigration law which prohibits appellant from remaining in the United States.[7] Appellant indicated in his statement that he had been a legal resident alien of the United States since the age of six, and he requested no other relief beyond the reduction in confinement to avoid being returned to Mexico. Appellant's wife indicated in her statement that she and appellant were getting divorced, and she complained as follows:

> They (the prosecutors) also told me not to worry if [appellant] loses his job and go[es] to jail because I would be compensated. Up to this date, I have not received a penny. Neither the prosecutors, nor anybody else, cares about my present living situation. Please take action on this case so I can receive the money that was promised to me.

Appellant, in his clemency submission, did not request a waiver of automatic forfeitures, nor did he mention the members' recommendation that appellant's spouse receive appellant's forfeited pay and allowances. The SJAR did not mention the members' recommendation. There is no evidence that

appellant's spouse, or her victim and witness liaison [hereinafter VWL], conveyed the members' recommendation of waiver of automatic forfeitures on behalf of appellant's spouse to the convening authority.

### Waiver of Automatic Forfeitures

■ Rule for Courts–Martial 1106(d)(3)(B) states that the SJA's recommendation shall include concise information relating to "[a] recommendation for clemency by the sentencing authority, made in conjunction with the announced sentence." Our superior court has determined that the sentencing authority's recommendation that payment of part of an accused's pay and allowances be made to his dependents is considered "clemency" under R.C.M. 1106. *See United States v. Lee*, 50 M.J. 296, 297 (1999).

The enactment of Article 58b, UCMJ, met two Congressional goals: "(1) to prevent or limit the pay and allowances that could be paid to a service member in post-trial confinement; and (2) to provide, at the convening authority's discretion, some limited compensation payable directly to the family of such confined service member." *Nicholson*, 55 M.J. at 553 n. 5 (citing Office of The Judge Advocate General, *Joint Service Committee on Military Justice Report: Analysis of the National Defense Authorization Act Fiscal Year 1996 Amendments to the Uniform Code of Military Justice*, Army Law., at 141–42 (March 1996)). We have reviewed numerous cases in which the defense counsel submitted a request for waiver of automatic forfeitures very soon after trial, or subsequently as part of matters submitted to the convening authority under R.C.M. 1105. The SJA typically forwards the defense counsel's request for waiver of automatic forfeitures to the convening authority with a recommenda-

---

6. Soldiers on excess leave are not entitled to pay and allowances. *See United States v. Nicholson*, 55 M.J. 551, 553 n. 3 (Army Ct.Crim.App.2001) (citing Army Reg. 600–8–10, Personnel Absences: Leaves and Passes (1 July 1994)); *United States v. Hicks*, 26 M.J. 935, 937 n. 1 (A.C.M.R.1988) (citing Dep't of Defense Military Pay and Allowances Entitlements Manual, para. 10306 (Jan. 1, 1967)).

7. Appellant provides no citation to support the contention that approval of six months' confinement will prevent him from remaining in the

United States. Under the Immigration and Nationality Act, aliens are deportable upon conviction of any "crime of violence" resulting in a prison sentence of at least one year, *see generally INS v. St. Cyr*, —— U.S. ——, —— n. 4, 121 S.Ct. 2271, 2277 n. 4, 150 L.Ed.2d 347 (2001) (citing 8 U.S.C. § 1101(a)(43)(F) (1994 ed., Supp. V)), or upon conviction of a "crime of domestic violence" without regard to the amount of the adjudged confinement, *see generally Sutherland v. Reno*, 228 F.3d 171, 178 (2nd Cir.2000) (citing 8 U.S.C. § 1227(a)(2)(E)(i) (1994)).

tion regarding whether such forfeitures should be waived. We have not seen any requests for waiver of automatic forfeitures by an appellant's dependents or their representative in which the defense recommended against approval.

Neither the UCMJ nor the *Manual for Courts–Martial* details the specific process for submitting and acting upon requests for waiver of automatic forfeitures. In *United States v. Brown,* 54 M.J. 289, 292 (2000), the Court of Appeals for the Armed Forces declined to decide whether an accused is entitled to notice and an opportunity to comment before the convening authority acts upon requests for deferment or waiver of automatic forfeitures.[8] The court commented that "[n]either [Article 58b] nor the subsequent amendments to the Manual addressed the issue of whether the convening authority was required to receive an SJA's recommendation before acting on a deferment or waiver request." *Id.* Our superior court suggested that "[c]onsideration should be given as to whether there might be circumstances in which the family could have interests separate from the accused which might be brought to the attention of the convening authority directly by the family rather than through the accused." *Id.*

Appellant's case presents a circumstance where the interests of appellant and his dependents diverged during the post-trial processing of appellant's case. Article 58b(b), UCMJ, was intended to benefit the appellant's dependents, not appellant. Paragraph 18–6c of Army Reg. 27–10, Legal Services: Military Justice (24 June 1996) [hereinafter AR 27–10], designates the SJA as the local responsible official for victim assistance. This responsibility includes the designation and supervision of VWLs. *Id.* at para. 18–7. Upon request by appellant's wife, who was the victim of appellant's crimes, her government representative or VWL was required to assist appellant's wife with her application for available Federal compensation, including submission of her request for waiver of automatic forfeitures to the convening authority. *See* AR 27–10, para. 18–12b. The objective of caring for the appellant's family through waiver of automatic forfeitures, until transitional compensation becomes available upon action by the convening authority,[9] is best accomplished by submission of such a request as soon after trial as possible. In any event, the SJA's last opportunity to resolve the issue of waiver of automatic forfeitures was when he presented the case to the convening authority for action.[10]

■■■ Because trial defense counsel did not comment on the SJAR's failure to include the members' recommendation to waive automatic forfeitures, we consider it waived absent plain error. *See* R.C.M. 1106(f)(6); *United States v. Powell,* 49 M.J. 460 (1998). Testing for plain error, we conclude that the omission from the SJAR was plain and obvious. We next must determine if the error materially prejudiced a substantial right of the appellant. *See Powell,* 49 M.J. at 463–64; *see also* UCMJ art. 59(a), 10 U.S.C. § 859(a). The test for material prejudice in post-trial processing cases is articulated in *United States v. Wheelus,* 49 M.J. 283, 289 (1998). An appellant must make "'some colorable showing of possible prejudice.'" *Id.* (quoting *United States v. Chatman,* 46 M.J. 321, 323–24 (1997)); *see also United States v. Hartfield,* 53 M.J. 719, 720–21 (Army Ct.Crim. App.2000).

---

8. We recommend that SJAs provide requests seeking waiver of automatic forfeitures submitted by dependents or VWLs to the defense before the convening authority acts.

9. 10 U.S.C. § 1059(h) (1994) does not permit appellant's dependents to receive transitional compensation for any period in which appellant received pay and allowances.

10. We conclude that the convening authority could retroactively waive appellant's automatic forfeitures to the benefit of his family. *See Nicholson,* 55 M.J. at 552 n. 4 (noting that we have not had complaints from appellants about the denial of payments based upon the common practice of retroactive waivers of automatic forfeitures). Thus, even though appellant's spouse could not receive both waived pay and allowances and transitional compensation for the same period, she would begin to receive $1140.00 per month in transitional compensation starting upon action by the convening authority, because the convening authority had the discretion to retroactively waive appellant's automatic forfeitures without causing the termination of transitional compensation.

■ The failure of the SJA to present to the convening authority the members' recommendation to waive automatic forfeitures was prejudicial error because the victim was eligible to receive appellant's pay and allowances that would otherwise be forfeited; she clearly needed financial support; and the members recommended that she receive such support. Appellant was indirectly prejudiced by this error because he had a legal responsibility to support his dependents. *See Lee*, 50 M.J. at 297–98 (finding prejudice to the accused under similar circumstances) (citing *Wheelus*, 49 M.J. at 288). Accordingly, we hold that the SJA committed plain error when he failed to call the convening authority's attention to the members' clemency recommendation made at the time of sentencing that appellant's spouse receive his pay and allowances. *See Lee*, 50 M.J. at 297–98 & n. 3 (citing *United States v. Clear*, 34 M.J. 129, 132 (C.M.A.1992)).

### Slow Post–Trial Processing

The post-trial processing of this case was unreasonably and inexplicably slow. The trial was completed on 25 March 1998. The 718–page record of trial was authenticated on 3 November 1998. The two-page SJAR was signed on 15 December 1998. Action was taken on 31 March 1999. While we find no specific prejudice to appellant due to slow post-trial processing, we do find specific prejudice to appellant's wife and son,[11] as well as a lack of fundamental fairness and due diligence in the post-trial processing of this case. *See* UCMJ art. 66(c); *United States v. Bauerbach*, 55 M.J. 501 (Army Ct.Crim.App. 2001); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct.Crim.App.2000). Because we are already returning this case for a new SJAR and action, the new SJA and convening authority will also be provided a discretionary opportunity to fashion an appropriate remedy for the untimely post-trial processing.[12]

We have reviewed appellant's other assignment of error and matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit. The action of the convening authority, dated 31 March 1999, is set aside.[13] The record of trial will be returned to The Judge Advocate General for a new R.C.M. 1106 staff judge advocate's recommendation and a new action by the same or a different convening authority in accordance with Article 60(c)–(e), Uniform Code of Military Justice.

Senior Judge TOOMEY and Judge CARTER concur.

---

11. Because appellant's ETS was 5 January 2000 and action was not taken until 31 March 1999, appellant's spouse and son received transitional compensation for only twelve months, the minimum allowable period. *See supra* text accompanying note 3. Thus, each month of delay in taking action between 25 March 1998 (the end of appellant's trial) and 5 January 1999 (one year prior to appellant's ETS) cost appellant's spouse and son approximately $1140.00 per month in transitional compensation.

12. The plea to Charge II on the promulgating order should also be corrected to reflect a plea of guilty.

13. Appellant's wife will be able to retain the transitional compensation monies received, despite our decision setting aside the action by the convening authority. 10 U.S.C. § 1059(e)(3)(C) (1994).